UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

Paul J. Murphy,

    Plaintiff,

v.

Cascades Containerboard Packaging,

    Defendant.

18-CV-375
Decision and Order

---

On March 23, 2018, the plaintiff, Paul J. Murphy, Regional Director of the Third Region of the National Labor Relations Board ("NLRB"), filed this action on behalf of the NLRB seeking a preliminary injunction under § 10(j) of the National Labor Relations Act ("the Act"), 29 U.S.C. § 160(j). Docket Item 1. The NLRB also moved for an expedited hearing and asked this Court to issue the injunction on the basis of affidavits and documentary evidence. Docket Items 2 and 3. The defendant, Cascades Containerboard Packaging – Lancaster, a division of Cascades New York, Inc. ("Cascades"), replied, Docket Item 9, and on April 11, 2018, a hearing was held. The Court reserved decision and asked the parties for additional submissions. Docket Item 10. Those submissions have now been filed. Docket Items 15 and 18.

## BACKGROUND[1]

Since 2004, Cascades has recognized the Graphic Communications Conference of the International Brotherhood of Teamsters (the "union"), Local 27 ("Local 27"), as the bargaining representative of Cascades' employees. In 2012, Local 27 suffered financial problems when a plant employing many of its members closed, and the union asked union Local 503-M ("Local 503") to accept the "administrative transfer" of Local 27. But after performing a due diligence review, Local 503 decided that it could not accept the transfer until Local 27 resolved its financial problems.

As a result, in September 2012, the union placed Local 27 in trusteeship, with the Local 503 president as trustee. The trusteeship lasted more than four-and-a-half years—until April 2017—when the union terminated the trusteeship and finalized the administrative transfer. According to Local 503, its president notified Cascades about the administrative transfer in a meeting at about that time.

In the meantime, in October 2016, Cascades negotiated a four-year collective-bargaining agreement with the Local 27 trustee. By all accounts, labor-management relations went smoothly until about a year ago. But in July 2017, when Local 503 asked Cascades to remit dues payments to Local 503 and filed grievances on behalf of four Cascades employees, Cascades refused both to recognize Local 503 as the employees' representative and to arbitrate the grievances. And so Local 503 brought an action in this Court, 17-CV-06605 (Telesca, J.), seeking to compel Cascades to arbitrate.

---

[1] The information here is taken from the brief, affidavits, and exhibits submitted by the parties.

Judge Telesca denied the motion for a preliminary injunction in December 2017. A little over three months later, and eight months after the problems between Cascades and Local 503 first surfaced, the NLRB stepped in. It sought injunctive relief by bringing the case at bar, and it issued a "Complaint and Notice of Hearing" before an administrative law judge to decide whether Cascades did, in fact, engage in unfair labor practices. That NLRB hearing was held in April and May of this year, post-hearing briefs have now been filed, and the matter is ripe for a decision by Administrative Law Judge Kimberley Sorg-Graves.

In the matter at bar, Local 503 appeared as amicus curiae and asked this Court to consolidate its action before Judge Telesca with this case. Cascades opposed that motion. Docket Item 16. Because the two cases are related, interests of efficiency cut in favor of consolidation. Therefore, Local 503's request is granted, and 17-cv-6605 (MAT) is consolidated with 18-cv-00375 (LJV) under the latter docket number.

## **DISCUSSION**

Although conceptually similar, the standard for analyzing a preliminary injunction generally and a preliminary injunction under § 10(j) differ slightly.[2] *Kreisberg v. Health Bridge Mgmt, LLC.*, 732 F.3d 131, 141 (2d Cir. 2013). The "two-prong standard for § 10(j) injunctive relief is well established." *Id.* The Court must find reasonable cause that an unfair labor practice has been committed and also must find the requested relief

---

[2] For that reason, the case before this Court requires analysis different than that applied by Judge Telesca in the parallel case brought by the union, 17-CV-06605. In that case, the union sought a preliminary injunction under the standard rules of equity, not under the Act.

3

to be "just and proper." *Id.* Reasonable cause means what it says: that there is reasonable evidence supporting the conclusion that an unfair labor practice occurred. A final determination on the unfair labor practice, however, is not necessary. *Id.*

"[I]njunctive relief under § 10(j) is just and proper when it is necessary to prevent irreparable harm or to preserve the status quo." *Hoffman ex rel. NLRB v. Inn Credible Caterers, Ltd.*, 247 F.3d 360, 368 (2d Cir. 2001). This standard reflects the principles that govern injunctive relief generally, but with a special gloss—the § 10(j) standard must be applied to "further the policies of the Act". *Id.* (internal citation omitted). And the status quo that must be preserved is what existed before the employer's unfair labor practice. *Id.*

## I. REASONABLE CAUSE

Here, the NLRB, now joined by Local 503, argues that two unfair labor practices, in violation of §§ 8(a)(1) and 8(a)(5) of the Act, justify the injunction: (1) Cascades' failure to recognize Local 503, and (2) Cascades' unilateral modification of the collective bargaining agreement. The NLRB and Local 503 assert that these two actions will result in irreparable harm to the union.

Whether Local 503 is, in fact, the official bargaining unit for the employees is part and parcel of the decision the ALJ Sorg-Graves will make. But at this phase, the Court need only find reasonable cause to believe that the failure to recognize and arbitrate with Local 503 is an unfair labor practice. According to the evidence submitted by the NLRB, there seems to be sufficient similarity between Local 503 and Local 27—the members have the same stewards, maintain the same grievance processes, and have

4

the same schedule of monthly meetings. Furthermore, the members have not been forced to pay any fee that would be expected of a new and different union.

Cascades responds that it is indeed willing to abide by the terms of the agreement it signed in 2016 but simply is not willing to bargain and arbitrate with Local 503—a union that its employees did not vote to join and that Cascades has never recognized. It notes that it is holding its employees' union dues in escrow pending resolution of the representation issue. And it argues that Local 503 is different in both size and location from Local 27, the union its employees voted to join, requiring another vote.

But for more than four years, Cascades has been working with the Local 503 president as the trustee for Local 27. So the refusal to work with that same person (albeit in a slightly different role) is a change that seems likely to adversely affect union efforts and reasonably supports the conclusion that an unfair labor practice occurred. And Cascades' professed willingness to abide by the terms of the 2016 agreement may be illusory if there is no means—such as arbitration—to challenge whether Cascades is, in fact, complying with the terms of that agreement. Cascades' refusal to arbitrate disagreements about its compliance therefore provides further reasonable cause to believe that Cascades committed an unfair labor practice.

Moreover, this Court is mindful of the deference afforded to the NLRB when considering a § 10(j). *See Inn Credible Caterers*, 247 F.3d at 365. Based on that deference and the evidence above, this Court finds reasonable cause to believe that Cascades' refusal to recognize and arbitrate with Local 503 constitutes an unfair labor practice. And that alleged unfair labor practice may well have a chilling effect on union

5

participation as well as disrupt the status quo for employees who previously had the benefit of an arbitration and grievance procedure to enforce their rights under the collective bargaining agreement.

## II.     JUST AND PROPER

Because there is reasonable cause to believe that Cascades committed an unfair labor practice, the Court must now decide what relief is "just and proper."  The NLRB, with the support of Local 503, has asked for an order compelling Cascades to (1) recognize Local 503 as the representative of Cascades' employees, (2) honor the collective-bargaining agreement, (3) bargain in good faith with the union, and (4) post the requested court order on Cascades' premises.  They also have asked that Cascades be compelled to arbitrate the pending grievances.

Injunctive relief should be designed to preserve the status quo, but here there is a significant difference of opinion on what that means.  For the NLRB and Local 503, status quo means putting Local 503 in the shoes of Local 27 and proceeding as if the transition between those locals was seamless.  The NLRB is particularly concerned that the contractual grievance and arbitration procedures be honored; not doing so makes it impossible for Local 503 to protect the interests of the employees while the case remains pending in front of the ALJ.  For Cascades, status quo means keeping things as they are now and preserving its non-recognition of Local 503, which it emphasizes it has never recognized.  Cascades asserts that the relief requested would be unduly burdensome, forcing them to pay for the cost of arbitrating a claim with a bargaining unit whose legitimacy is uncertain.

And Cascades notes that ALJ Sorg-Graves held the NLRB hearing in April and May of this year to determine whether Cascades must recognize Local 503 as the representative of the former Local 27 members, and that matter is now ripe for decision. The petitioners reply that the pending decision—and a possible appeal—may take some time and therefore do not obviate the need for injunctive relief.

Over the past couple weeks, all three parties—the NLRB, Local 503, and Cascades—have submitted letters, unsolicited by the Court, asserting various reasons why this matter does or does not need immediate attention. Docket Items 19, 20, 21. In an effort to give this matter the attention it deserves and preserve the status quo as best it can, the Court has fashioned the following relief which should preserve the labor interests at stake while preventing Cascades from facing a significant hardship:

1. Cascades shall honor the 2016 collective bargaining agreement, as it has agreed to do;
2. Cascades may continue to hold union dues payments in escrow pending the NLRB decision by ALJ Sorg-Graves and any decision on appeal; and
3. Cacades shall recognize Local 503 for the sole purpose of arbitrating grievances.

## **ORDER**

For the reasons stated above, the application for preliminary injunctive relief under § 10(j) of the Act, Docket Item 1, is GRANTED IN PART and DENIED IN PART. Cascades shall honor the 2016 collective bargaining agreement; may continue to hold union dues in escrow pending a decision by the NLRB and any decision on appeal; and shall recognize Local 503 only for the purpose of arbitrating grievances. All other requested preliminary injunctive relief is DENIED.

The union's motion for consolidation, Docket Item 11, is GRANTED, and the motions to expedite review and decide the injunction based on documentary evidence, Docket Items 2 and 3, also are GRANTED.

IT IS SO ORDERED.

Dated: July 30, 2018
Buffalo, New York

      *s/Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE